Michael R. Lozeau (State Bar No. 142893)
Victoria A. Yundt (State Bar No. 326186)
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Tel: (510) 836-4200
E-mail: michael@lozeaudrury.com
          victoria@lozeaudrury.com

Barak Kamelgard (Bar No. 298822)
Email: barak@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

**JS-6**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>METAL SURFACES INTERNATIONAL, LLC, a California limited liability company,<br><br>Defendant. | Case No. 2:23−cv−01405−CAS−ASx<br><br>**[PROPOSED] CONSENT DECREE** |

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Metal Surfaces International, LLC ("Defendant" or "Metal Surfaces") owns and operates a facility at 6060 Shull Street in Bell Gardens, California, 90201 ("Facility").

**WHEREAS**, the Facility's industrial activities consist of activities associated with manufacturing, recycling, waste treatment, and disposal, among other activities related to the industrial precision plating process. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3471, covering Electroplating, Plating, Polishing, Anodizing, and Coloring.

**WHEREAS**, stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos. 2015-0057-DWQ and 2015-0122-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring

implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on December 12, 2022, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ and Order 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on February 24, 2023, LA Waterkeeper filed a complaint against Metal Surfaces in the Central District of California, Civil Case No. 2:23-cv-01405 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including storm drains or channels that empty downstream into Reach 2 of the Los Angeles River. The Los Angeles River, in turn flows into Reach 1 and then into the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay ("Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the term of this Consent Decree.

I. **OBJECTIVES**

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all

terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8.     Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. If the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10.     Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. DEFINITIONS

11.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules.

Whenever terms listed below are used in this Consent Decree, the following definitions apply:

    a. "BAT" means the Best Available Technology Economically Achievable.

    b. "BCT" means the Best Conventional Treatment Technology.

    c. "BMPs" means Best Management Practices.

    d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

    f. "Design Storm" means the volume of runoff produced from an 85th percentile, 24-hour storm event.

    g. "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

    h. "Effective Date" means the effective date of this Consent Decree, which shall be the date of execution by the Parties.

    i. "MIP" means a Monitoring Implementation Plan.

    j. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

    k. "Reporting Year" means the period from July 1 of a given year to June 30 of the following year.

    l. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

    m. "SWPPP" means a Storm Water Pollution Prevention Plan.

    n. "Term" means the period between the Effective Date and the "Termination Date."

    o. "Termination Date" means the latest of:

      i.  Two (2) years from the Effective Date, if there are no further exceedances, as defined in Paragraph 16(b) below, of the instantaneous maximum Numeric Effluent Limitation ("NEL") for zinc or cadmium or the Numeric Action Level ("NAL") for the pollutants contained below in Table 1 and Table 2, respectively;

      ii.  If there is an exceedance, as defined in Paragraph 16(b) below, of either an NEL or NAL in Table 1 and Table 2 triggering the implementation of the Stormwater Rx Aquip stormwater treatment system ("Aquip System") at the Facility, then June 30 following two (2) years after the date that the treatment system is operational;

     iii.  seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated before the dates set forth in Paragraphs 11(p)(i) or 11(p)(ii) above, as applicable; or

     iv.  seven (7) calendar days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

    p.  "Wet Season" means the seven-month period beginning October 1st of any given year and ending April 30th of the following year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.   <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.   <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement

additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14. <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times for all rain events. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15. <u>Compliance with the General Permit's Numeric Effluent Limitations</u>: Defendant shall strictly comply with the General Permit's instantaneous maximum NELs for zinc and cadmium. Any exceedance, as defined in Paragraph 23 below, of the zinc or cadmium NEL levels contained in Table 1, shall constitute a violation of this Consent Decree.

16. <u>Structural and Non-Structural BMPs for the Facility</u>: Defendant shall develop and implement the following BMPs at the Facility:

    a. Within forty-five (45) days of the Effective Date, Defendant shall maintain weekly sweeping for the entire industrial area of the Facility using the NPR Gas model sweeper, or equivalent, including the water spray system, shown in Figure 1 and described in Exhibit A.

b. If during either the 2023-2024 Wet Season or 2024-2025 Wet Season, two (2) or more analytical results from storm water samples taken for any single parameter at the Facility within a reporting year exceeds the instantaneous maximum NELs for zinc or cadmium in Table 1 or exceeds any applicable NAL for any other pollutant in Table 2, then within the six (6) months of receipt of the laboratory report identifying the NEL or NAL exceedance, but, if feasible, not later than October 1 of that calendar year, Defendant shall install and operate a properly sized and configured Stormwater Rx Aquip stormwater treatment system ("Aquip System") identified in Exhibit B at the Facility.

The following detailed time schedule of specific actions shall be performed by Defendant as follows:

    i.    The Aquip System shall be configured to remove, at minimum, the pollutants which exceeded the NEL and/or NAL.

    ii.    The Aquip System must be designed to capture all the Facility's stormwater associated with industrial activities consistent with the design storm standards set forth in the General Permit at section X.H.6.

    iii.    Within ten (10) days of receipt of any proposals prepared by Stormwater Rx for implementing an Aquip System at the Facility, Defendant shall share the proposals with LA Waterkeeper, including all calculations to comply with the design storm standards set forth at section X.H.6 of the General Permit and confirmation of the system's effectiveness at treating the relevant pollutant(s).

    iv.    The Aquip System must also be accompanied by a maintenance plan to ensure its continued effectiveness.

v.   Within fourteen (14) days of completing the installation and initial operation of the Aquip System, Metal Surfaces shall confirm the installation of the Aquip System by forwarding to Plaintiff photographs of the installed treatment system and a certification that installation of the treatment system has been completed and the treatment system is fully operational.

FIGURE 1



**B. SAMPLING AT THE FACILITY**

17.   Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point consistent with the Monitoring, Sampling, and Analysis Requirements found in General Permit § XI and Compliance Groups found in General Permit § XIV which require that Defendant shall collect and analyze storm water samples from one (1) QSE within the first half of each reporting year (July 1 to December 31), and one (1) QSE within the second half of each reporting year (January 1 to June 30). Such sampling shall take place as soon as possible within the

[PROPOSED] CONSENT DECREE

four- (4-) hour period required by the General Permit § XI.B.5. All Qualified Storm Events, whether sampled or not, including without limitation as a result of insufficient discharge, shall be documented, including by taking photographs when possible, and submitted to LA Waterkeeper by email, along with rain gauge/sensor data for the data, within five (5) days of a written request for such records by LA Waterkeeper.

18.     Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1 and Table 2. Should Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations or a revised pollutant source assessment, such parameter shall be treated as if listed in Table 2 for the purposes of this Consent Decree, including the action plan requirements below, and the Parties shall meet and confer regarding the applicable Table 2 limit for such purposes.

19.     Laboratory and Holding Time. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

20.     Detection Limit: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 and Table 2 below.

21.     Reporting: Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving complete laboratory results.

[PROPOSED] CONSENT DECREE

## C. REDUCTION OF POLLUTANTS IN DISCHARGES

22.     Table 1 and Table 2 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1 and Table 2.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Zinc | 0.159 mg/L | Instantaneous Maximum NEL |
| Cadmium | 0.0031 mg/L | Instantaneous Maximum NEL |

**TABLE 2**

| Analytes | Values | Source of Limit |
|---|---|---|
| N+N | 0.68 mg/L | Annual NAL |
| Iron | 1.0 mg/L | Annual NAL |
| Aluminum | 0.75 mg/L | Annual NAL |
| Total Suspended Solids ("TSS") | 100 mg/L | Annual NAL |
| Oil & Grease ("O&G") | 15 mg/L | Annual NAL |
| pH | Less than  6.0 Greater than 9.0 s.u. | Instantaneous Maximum NAL |

23.     <u>Table 1 and Table 2 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any storm water sample from the Facility exceeds any numeric limit contained in Table 1. An "Exceedance" of Table 2 is defined as follows: Consistent with General Permit § XII.A.1, where the average concentration of any pollutant in storm water samples from the Facility with an annual limit exceeds any numeric annual NAL limit contained in Table 2 or two (2) or more analytical results from storm water samples taken for any single parameter  at the Facility within a reporting year exceeds any numeric NAL limit contained in Table 2, unless the average for all collected samples at the time the sample is taken does not exceed any numeric annual limit contained in Table 2. An Exceedance shall constitute a violation of this Consent Decree.

24.     Action Plan for Table 1 and Table 2 Exceedances: As of the Effective Date, and for the remainder of the Term, if Defendant discharges non-stormwater from a Discharge Point in violation of Paragraph 12, or storm water samples demonstrate an Exceedance as defined above, except for the actions already described in Paragraph 16, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the non-stormwater discharge or the receipt of the laboratory report demonstrating the Exceedance, as applicable.

a. Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Defendant shall notify LA Waterkeeper in writing when an Action Plan has been implemented.

b. Action Plan Proposed BMPs: The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 and Table 2 levels in the Facility's storm water discharges:

i. Sweeping: The increased/more frequent use of sweepers, such as the sweeper identified in Figure 1 above, and manual sweeping in otherwise inaccessible areas.

11

        ii.  <u>Treatment Systems</u>: Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, e.g., the Aquip System that Defendant is required to implement if an exceedance of the instantaneous maximum NEL for zinc or cadmium takes place, as discussed in Paragraph 16(b), or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water before discharge.

        iii.  <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or eliminating existing BMPs, considering the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.  <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.  Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 29(b) below.

e.   Notwithstanding these Action Plan requirements, once the installation and operation of the treatment system is triggered pursuant to Paragraph 16(b) above, no Action Plan is required for any Exceedances of those parameters during the period of time from when a treatment system is triggered until the time the treatment system is operational.

### D. VISUAL OBSERVATIONS

25.   <u>Storm Water Discharge Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

26.   <u>Monthly Visual Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

27.   <u>Visual Observations Records</u>: Defendant shall maintain observation records, including photographs, to document compliance with Paragraphs 25 and 26. Such records shall include, but not be limited to, the persons who completed the

inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an adequate condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

28.   <u>Employee Training Program</u>: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

      a.   Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

      b.   <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

      c.   Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the General

Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. <u>Sampling Training</u>: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. <u>Visual Observation Training</u>: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. <u>Non-Storm Water Discharge Training</u>: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

h. The Defendant shall maintain training records to document compliance with this paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request;

i. <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within thirty (30) days of the effective date, Defendant shall update the SWPPP to identify the positions and

persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

29. SWPPP Revisions:

    a. Initial SWPPP Revisions: Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper for its review and comment within thirty (30) days of the Effective Date.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

        i. An updated site map to include the locations of roof drains and direction of storm water flows from the Facility's roofs;

        ii. An updated narrative assessment addressing topics i, ii, iv, v, vi, vii, and viii of Section X.G.2.a of the General Permit. The narrative assessment shall include, but not be limited to, addressing any pollutants that may be present on the Facility's roofs, including emissions of zinc, cadmium, and N+N through any air vents, filters or ducts. The narrative assessment also shall include, but not be limited to, a thorough description of the type and number of vehicles used within the Facility's industrial storm water drainage area;

        iii. Descriptions of the sweeping practices, including the type of sweeper and its capabilities, the sweeping coverage, and the sweeping schedule;

        iv. If the Aquip System is implemented, Defendant shall include an updated description of the system, its capacity, and its maintenance program;

        v. A designation (by position/title) of employees for specific SWPPP implementation responsibilities, e.g., visual inspection of each

specific area, monitoring each specific BMP, sampling, etc., including an updated list of additional monitoring team members and the procedures to be used to ensure a sample is taken when it rains during all the Facility's operational hours; and

    vi.  A Training Program as described above at Paragraphs 28(a) through 28(i).

  b.  <u>Additional SWPPP Revisions</u>:

    i.  Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    ii.  Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or Pollution Prevention Team members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

  c.  <u>Review of SWPPP</u>:  For any SWPPP updates pursuant to Paragraphs 29(a) and 29(b), LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall

consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the SWPPP to SMARTS.

### E. COMPLIANCE MONITORING AND REPORTING

30.     Every year during the Term, LA Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice before a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 58. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s)

being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31. <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

    a. Defendant shall copy LA Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

    b. Within five (5) business days of receipt by Defendant, send to LA Waterkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Defendant shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

32. <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the 2023-2024 and 2024-2025 Wet Seasons by paying Fifteen Thousand Dollars ($15,000.00).  This payment shall be made within thirty (30) days of the Effective Date. In the event this Consent Decree continues in effect in subsequent Wet Seasons, Defendant shall reimburse LA Waterkeeper an additional Seven Thousand Five Hundred Dollars ($7,500) for each such additional year. Payment shall be made by July 1st of each such additional year. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E

2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this paragraph will constitute a breach of the Consent Decree.

### F. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

33.    Environmental Mitigation Project: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the Southern California Bight, Defendant agrees to make a payment totaling Forty-Two Thousand Five Hundred Dollars ($42,500) to the Rose Foundation made within thirty (30) days of the Effective date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

34.    LA Waterkeeper's Fees and Costs: Defendant agrees to pay a total of Seventy-Five Thousand Dollars ($75,000.00) within thirty (30) days of the Effective Date to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment shall be made payable to: "Lozeau Drury LLP" and delivered by overnight carrier to Lozeau Drury LLP, c/o Michael Lozeau, 1939 Harrison Street, Suite 150, Oakland, CA 94612. Failure to submit payment as required under this paragraph will constitute a breach of the Consent Decree.

35.    If Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Seven Hundred Fifty Dollars ($750). Such stipulated payments shall be made by check payable to: "Rose Foundation for Communities and the Environment" and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as discussed in Paragraph 33. Payment shall be

delivered by overnight carrier to the Rose Foundation, 201 4th Street, Suite102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV. **DISPUTE RESOLUTION**

36.     This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37.     <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

38.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 38, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

V. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

40.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Effective Date.

VI. **MISCELLANEOUS PROVISIONS**

43.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

22

44.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

48.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.     Severability. If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.     Choice of Law. The laws of the United States shall govern this Consent Decree.

51.     Diligence: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.     <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.     <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

54.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.     <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56.     <u>Force Majeure</u>. Neither of the Parties shall be deemed in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party

seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
360 E 2nd St., Suite 250
Los Angeles, CA 90012
barak@lawaterkeeper.org
ben@lawaterkeeper.org
Phone: (310) 394-6162

<u>If to Defendant</u>:
Charles K. Bell
Metal Surfaces International, LLC
1560 Scott Street
San Diego, CA 92106
cbell@metalsurfaces.com

Olaf Schubert, President
Sam Bell, Vice-President
Metal Surfaces International, LLC
6060 Shull Street
Bell Gardens, CA 90201
oschubert@metalsurfaces.com
sbell@metalsurfaces.com

<u>With copies to</u>:
Michael Lozeau
Victoria Yundt
Lozeau Drury LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
michael@lozeaudrury.com
victoria@lozeaudrury.com
Phone: (510) 836-4200

<u>With copies to</u>:
Charles Pomeroy
StilesPomeroy LLP
301 E. Colorado Blvd., Suite 600
Pasadena, CA 91101
cpomeroy@stilespomeroy.com
Phone: (626) 243-5599

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the DOJ objects to this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.


APPROVED AS TO CONTENT


Dated: July 14, 2023                    By: _____
                                            Bruce Reznik, Executive Director
                                            Los Angeles Waterkeeper


Dated: July 14          , 2023          By: _____
                                            Olaf Schubert, President
                                            Metal Surfaces International, LLC

26
[PROPOSED] CONSENT DECREE

APPROVED AS TO FORM

Lozeau Drury LLP

Dated: July 14, 2023

By: _Michael R. Lozeau_
Michael Lozeau
Attorney for Plaintiff
Los Angeles Waterkeeper

StilesPomeroy LLP

Dated: July 17, 2023

By: _Charles H Pomeroy_
Charles Pomeroy
Attorney for Defendant
Metal Surfaces International, LLC

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: August 24, 2023        CENTRAL DISTRICT OF CALIFORNIA

_Christina A. Snyder_
Honorable Christina A. Snyder
United States District Court Judge

27

# EXHIBIT A

# SuperVac
# Super Updraft

## CHASSIS

| | |
|---|---|
| Model / Type | NPR Gas |
| Manufacturer | Isuzu |
| Engine | GM V8 Vortec 6.0 Liter |
| Fuel | Gas, 30 Gal In Frame Tank |
| Air filter | Dry type, heavy duty |
| Standard GVWR | 12,000 lb (5,443 kg) * |
| Decal GVWR | 14,500 lb (6,577 kg) * * |
| Transmission | 6L90 6 speed automatic |
| Tires | (6) Tubeless steel belted radials |
| * 12,000 GVW | 215/85R16E (10-ply) |
| * * 14,500 GVW | 225/70R19.5G (14-ply) |
| Wheels | Steel construction |
| Steering | Integral power |
| Brakes | Vacuum /hydraulic wdwh 4-channel ABS |

## GENERAL SPECIFICATIONS:

| | |
|---|---|
| Wheelbase | 133 in (3378 mm) |
| Sweeping width | 81 in (2057 mm) |
| With one gutter broom option | 94 in (2388 mm) |
| Turning radius | 274 in (6960 mm) |
| Overall length | 230 in (5842 mm) |
| Overall height (without beacon) | 82 in (2083 mm) |
| Overall width | 89 in (2261 mm) |

## AUXILIARY ENGINE:

| | |
|---|---|
| Manufacturer | BGG Vanguard Big Block |
| Horse power | 25 |
| Type | Air cooled gasoline |
| Air cleaner | Centrifugal multi-stage |
| Cylinder | Cast iron cylinder sleeve |
| Warranty | 3 year |

## DEBRIS HOPPER:

| | |
|---|---|
| Volumetric capacity | 3.0 cu yd (2.3 cum) |
| Dumping | Hydraulic high dump |
| Material | Stainless steel |
| Dump height | 69 in (1753 mm) |
| Dumping tilt angle | 88° |
| Inspection doors | 1 on left side, 1 on right side |
| Controls | Electric, in-cab |
| Paint | Imron Elite® |

## ELECTRICAL SYSTEM:

| | |
|---|---|
| Battery | Electric, in-cab |
| Controls | |
| Circuit protection | Resettable circuit breakers |
| Rear view camera | Color, dash mounted |

## FAN SYSTEM:

| | |
|---|---|
| Type | Whisper wheel turbine |
| Drive | Belt driven |
| Number of blades | 14 |
| Diameter | 24 in (610 mm) |
| Construction | Welded abrasion-resistant steel |
| Housing liner | Bolt-in corded rubber |
| Mounting | Pillow block bearings |
| Vacuum enhancer | For heavy/light material |

## PICKUP HEAD:

| | |
|---|---|
| Type | Debris-moving blast and suction |
| Operating direction | Forward and reverse |
| Suspension | 2 trailing arms, 4 springs balanced |
| Length | 80 in (2032 mm) |
| Pressure hose diameter | 10 in (254 mm) |
| Suction hose diameter | 10 in (254 mm) |
| Flap design | 3 flaps |
| Controls | Hydraulic raise and lower |
| Skids | Tungsten carbide |

## OPTIONAL WATER SYSTEM:

| | |
|---|---|
| Type | Diaphragm |
| Tank capacity | 25 gal (951) |
| Construction | Polyethylene |
| Pump | Electric 12 V dc |
| Controls | Electric, in-cab |
| Filter | 100 mesh screen |
| Mounting | Recessed |
| Fill diameter | 3 in (76.2 mm) |
| Nozzles | 2 on broom, 2 inside hopper |
| Optional | Front spray bar |

## SIDE BROOM:

| | |
|---|---|
| Type | Vertical digger |
| Bristle | Wire or poly |
| Diameter | 26 in (660 mm) |
| Drive | Hydraulic torque motor |
| Speed | Variable |
| Mounting | Trailing arm design |
| Location | Left hand side |
| Suspension | Free floating |
| Wear adjustment | Automatic |
| Impact protection | Spring |
| Tilt angle adjustment | Manual, at broom |

## HYDRAULIC SYSTEM:

| | |
|---|---|
| Type | Belt driven gear pump |
| Fluid capacity | 3 gal (11.4 l) |
| Pump type | Power Updraft broom |
| Dump system hydraulics | 12 V power unit, 1 gal (3.8 l) |

## OPTIONAL EQUIPMENT:

Polyethylene toolbox
Rear brush bag rack
Cab mounted strobe
Extra floodlight
Curb blower



Note: design and specifications subject to change without notice

Also Available from Schwarze Industries, Inc:

© Schwarze Industries 2019
1055 Jordan Road
Huntsville, AL 35811
800.879.7933
An Alamo Group Company

Schwarze parking lot sweepers are guaranteed to be free from defects due to faulty materials and / or workmanship for a period of 12 months, or 1200 hours. Liability is limited to replacement or repair of defective part(s) at factory or authorized dealer. The standard warranties of the chassis and auxiliary engine manufacturer shall apply.

Your Schwarze Representative:

Affiliates:

GSA    Sourcewell    HGACBuy
NAPSA    1-800 SWEPR

# EXHIBIT B



# Technical Datasheet

## Aquip® Media Filter
### enhanced passive media filtration

**Aquip (uh-KWIP)** is a patented[†], passive media filtration technology for enhanced stormwater treatment. Sized to fit the hydrology of the site, Aquip is typically installed above ground and fed by a simple pump station.

Aquip's simple, easy-to-operate system uses media that can be formulated to remove a wide range of pollutants: suspended solids, turbidity, heavy metals (including dissolved metals), organics (e.g. BOD, COD and hydrocarbons); and nutrients like nitrogen and phosphorus. Targeted metals include copper, lead, zinc, iron, aluminum, nickel, cadmium and others.

| Target Pollutants | |
|---|---|
| Suspended solids | BOD/COD |
| Turbidity | Phosphorus |
| Metals | |

## Aquip® Advantages

- Removes suspended solids, turbidity, dissolved pollutants (including heavy metals), organics and phosphorus
- Targeted metals include copper, zinc, iron, lead, aluminum, nickel and others
- Patented filtration —no chemicals or backwash
- Passive gravity flow-through system —no moving parts
- Open top for easy access and maintenance
- Operates unattended
- Simple and safe effluent sampling
- TAPE CULD approved



Pretreatment chamber   Distrubution header   Filtration chamber
Inlet (not shown)   Emergency overflow indicator   Emergency overflow bypass   Outlet
Forklift pockets allow for unit mobility when system is empty.   Outlet sample port   Adjustable head control

[†]US Pat. 8,002,974, Canada Pat. 2,640,800

| Model | Treatment Rate (gpm) | Footprint (ft x ft) |
|---|---|---|
| 10S/P | 5 -15 | 3 x 9 |
| 25S | 12 - 40 | 5 x 9 |
| 50S | 25 - 75 | 7 x 12 |
| 80S | 40 - 120 | 7 x 16 |
| 110S | 60 - 170 | 8 x 18 |
| 160S | 80 - 240 | 8 x 27 |
| 210S | 100 - 320 | 8 x 32 |
| 300S | 150 - 450 | 13 x 36 |
| 400S | 200 - 600 | 13 x 47 |

* Varies by region

### Options
- Available structures include steel, concrete, and plastic
- Freeze protection, cover and other options available

1.800.680.3543
1.503.233.4660
stormwaterx.com

StormwateRx LLC designs, manufactures, installs and maintains stormwater treatment systems for industrial customers. Contact StormwateRx to find out how we can help you meet your stormwater quality requirements.





# Aquip® Enhanced Media Filter



*Aquip 110S with optional freeze protection and rolltop cover*



*Aquip 250C underground (full gravity flow)*



*Aquip 400SBE*



Influent: 25mg/L (TSS)  Effluent: <10mg/L (TSS)



Influent: 347mg/L (TSS)  Effluent: <10mg/L (TSS)





**a newterra company**

1.800.680.3543 | 503.233.4660

**stormwaterx.com**

StormwateRx and the Newterra logo are trademarks or registered trademarks of Newterra Group, Ltd. or its affiliates in the U.S. and other countries. Copyright © 2019 StormwateRx LLC and Newterra Group, Ltd. All rights reserved. Specifications are subject to change without notice. 11-2019 v026.